**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY f/k/a USF INSURANCE COMPANY, a Michigan corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.  2:24-cv-04609-BHH |
| FOUR BUILDERS PLUS, LLC, a South Carolina Limited liability company; C.F. EVANS CONSTRUCTION COMPANY, LLC, a South Carolina limited liability Company; C. HAMPTON ATKINS;  SUSAN J. ATKINS; MARKMA. BARFORD; MICHELLE T. BARFORD; HOLLY BLANCHARD; LEO BRUEGGEMAN; DARCI BUCHANAN; KARL BUCHANAN: BEVERLY CARROLL; THOMAS CORDEIRO; SAM FENSTERSTOCK; LAURA FENSTERSTOCK; GAYLE C. FOSTER; ROBERT S. FOSTER, SR.; JAN R. GUNN; KIRK A. GUNN; MATTHEW HORTON; JEFFREY D. LEHNEN; KIMBERLY H. LEHNEN; LINDSEY L. FISHER; CHRISTIAN LIE; JAMES MCCALLISTER; PATRICIA M. CALLADINEMCCALLISTER; CONNIE MICHELS; JOHN MICHELS; KAREN     MILLER;     THOMAS NOETHEN; ELLEN PARKER; MATTHEW V. ROUGHGARDEN; NANCY     T.     ROUGHGARDEN; LYDIA     SCHAFER;     PATRICK | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |

SCHAFER; ANNETTE P. SHERMAN; )
ENOCH G. SHERMAN; BETH )
STENGER; )
WALTER STENGER; CHRIS )
TAYLOR; JANE TAYLOR; TARA )
WHITE; WILLIAM WHITE; LEAH )
WILKINS; TAL WILKINS; )
CATHERINE T. YOUNG; and )
THOMAS E. YOUNG, JR., )
Individually on behalf of all other )
similarly situated, and on behalf of )
The Preserve at the Clam Farm )
Homeowners Association, Inc., )
 )
      Defendants. )

## COMPLAINT FOR DECLARATORY JUDGMENT

The Plaintiff, ATAIN SPECIALTY INSURANCE COMPANY, f/k/a/ USF INSURANCE COMPANY ("Atain"), files this Complaint for Declaratory Judgment against the Defendants, FOUR BUILDERS PLUS, LLC ("Four Builders"), C.F. EVANS CONSTRUCTION COMPANY, LLC ("C.F. Evans"), C. HAMPTON ATKINS, SUSAN J. ATKINS, MARK M. A. BARFORD, MICHELLE T. BARFORD, HOLLY BLANCHARD, LEO BRUEGGEMAN, DARCI BUCHANAN, KARL BUCHANAN, BEVERLY CARROLL, THOMAS CORDEIRO, SAM FENSTERSTOCK, LAURA FENSTERSTOCK, GAYLE C. FOSTER, ROBERT S. FOSTER, SR., JAN R. GUNN, KIRK A. GUNN, MATTHEW HORTON, JEFFREY D. LEHNEN, KIMBERLY H. LEHNEN, LINDSEY L. FISHER, CHRISTIAN LIE, JAMES MCCALLISTER, PATRICIA M. CALLADINE-MCCALLISTER, CONNIE MICHELS, JOHN MICHELS, KAREN MILLER, THOMAS NOETHEN, ELLEN PARKER, MATTHEW V. ROUGHGARDEN, NANCY T. ROUGHGARDEN, LYDIA SCHAFER, PATRICK SCHAFER, ANNETTE P. SHERMAN,

ENOCH G. SHERMAN, BETH STENGER, WALTER STENGER, CHRIS TAYLOR, JANE TAYLOR, TARA WHITE, WILLIAM WHITE, LEAH WILKINS, TAL WILKINS, CATHERINE T. YOUNG, and THOMAS E. YOUNG, JR., Individually on behalf of all other similarly situated, and on behalf of The Preserve at the Clam Farm Homeowners Association, Inc. (collectively, "Homeowners") and in support, states:

## NATURE OF ACTION

1. This is an action for declaratory relief under 28 U.S.C. § 2201 (2024) and FED. R. CIV. P. 57 (2024) to establish the absence of coverage under two Commercial General Liability ("CGL") insurance policies issued to Four Builders, for a lawsuit filed against Four Builders by the Homeowners and a cross-claim filed by C.F. Evans, and arising out of alleged construction defects lawsuit brought by the Homeowners of the Preserve at Clam Farm (the "Clam Farm Lawsuit").

## JURISDICTION AND VENUE

2. Jurisdiction is proper because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

3. Venue is proper in this district because the events giving rise to the claim occurred here. 28 U.S.C. § 1391(a)(2) (2024). More specifically, this is the district where the underlying action is venued, and where the insured risk lies. At least one of the Defendants is domiciled in this district.

4. All conditions precedent have occurred, have been performed, or have been waived.

## THE PARTIES

5.    The Plaintiff, Atain, is a Michigan corporation with its principal place of business in Michigan. Atain is a surplus lines insurance company under S.C. Code § 38-45-10, *et seq.* and issued two Commercial General Liability ("CGL") Policies to Four Builders.

6.    The Defendant, Four Builders is a South Carolina limited liability company with its principal place of business in Summerville, South Carolina. Four Builders members, Gregory Brooks and Jennifer Brooks are citizens of South Carolina, and no members of Four Builders are citizens of Michigan. Four Builders was originally named as a third-party defendant in the Clam Farm Lawsuit by C.F. Evans, but was subsequently joined as a direct defendant by the Homeowners and as a cross-claim defendant of C.F. Evans, which was filed in the Ninth Judicial Circuit, South Carolina. Four Builders is the sole named insured on the Policies issued by Atain.

7.    The Defendant, C.F. Evans is a South Carolina limited liability company with its principal place of business in South Carolina. C.F. Evans's members are citizens of South Carolina, and none of C.F. Evans's members are citizens of Michigan. C.F. Evans was a general contractor on the Clam Farm Project and initially filed a third-party complaint against Four Builders in the Clam Farm Lawsuit, which subsequently became a cross-claim once the Homeowners made direct claims against Four Builders. C.F. Evans also has asserted it is an additional insured under the Policies Atain issued to Four Builders.

8.     The Defendants, Homeowners, are all citizens of South Carolina, who as unit owners at the Preserve at Clam Farm Project, initially filed suit against C.F. Evans and others, alleging that the defendants negligently designed, developed or constructed the Clam Farm Project. The Homeowners subsequently asserted direct claims against Four Builders, which are currently pending in the Ninth Judicial Circuit, South Carolina.

## COMMON ALLEGATIONS

9.     **THE CLAM FARM LAWSUIT**: The Homeowners initially filed a lawsuit in the Charleston County Court of Common Pleas, Case No. 2022-CP-10-05277, against C.F. Evans and others due to alleged defects in the construction the Preserve at Clam Farm (the "Project"). The Homeowners subsequently amended the Claim Farm Lawsuit to name Four Builders as a defendant. The Homeowners' current operative pleading is their amended complaint, a copy of which is attached as Exhibit "A" and is hereinafter referred to as the "Clam Farm Complaint" or "Clam Farm Lawsuit."

10.     The Homeowners allege that their lawsuit arises from the development, construction and management of townhomes located at Clam Farm, physically located at 2107 Folly Road, Charleston, Charleston County, South Carolina. (Ex. A, ¶ 61).

11.     The Homeowners allege that the Clam Farm Project consists of three phases, Phases I, II and III, and was constructed in order of Phase I, Phase III, and Phase II. (Ex. A, ¶ 62).

12.     The Homeowners allege that C.F. Evans was the general contractor on Phase I of the Clam Farm Project. (Ex. A, ¶ 10). The Homeowners allege that Four Builders was a subcontractor of C.F. Evans for Phase I construction. (Ex. A, ¶ 19).

13. The Homeowners allege that on or about July 31, 2008, through the RMC Office for Charleston County, Clam Farm Partnership filed the Master Deed for The Preserve at the Clam Farm Horizontal Property Regime (the "Master Deed"), which created the Clam Farm Horizontal Property Regime (the "Regime") and established The Preserve at the Clam Farm Condominium Association (hereinafter "Project"). (Ex A, ¶ 63).

14. The Homeowners allege that Clam Farm Partnership subsequently abandoned the Regime and on or about March 17 and 18, 2010, through the RMC Office for Charleston County, Clam Farm Partnership filed and established the Declarations of Covenants, Conditions, Easements and Restrictions (the "Declarations") and Bylaws of The Preserve at the Clam Farm Homeowners Association (the "Bylaws") for Clam Farm and Amendments, which govern the lots and townhomes that currently exist at Clam Farm (Ex. A, ¶ 10).

15. The Homeowners allege that "[s]ince the construction of Clam Farm, buildings in all three phases have exhibited evidence of premature degradation of building components, including paint and sealants, as well as building performance failures, including, but not limited to, water intrusion, termites, structural failure, and settlement issues." (Ex. A, ¶ 67).

16. The Homeowners allege that "[d]ue to design and construction deficiencies, continuous and repeated exposure to harmful conditions, including but not limited to water intrusion, has occurred resulting in physical injury to tangible property and damages; the [Homeowners] have and will continue to be proximately damaged by the

deficiencies existing at Clam Farm, all of which are the fault of the Defendants [including Four Builders and C.F. Evans]…." (Ex. A, ¶ 68).

17.    The Homeowners allege that "[a]s a direct and proximate result of the accidental acts and omissions of the Defendants [including Four Builders and C.F. Evans], [Homeowners] have suffered injuries and continue to suffer injuries, and are entitled to the recovery of damages in the amount of the cost to repair Clam Farm, consequential damages, including loss of use and loss of value, punitive damages … attorney's fees … plus costs and interest. (Ex. A, ¶ 69).

18.    The Homeowners allege that they "have brought water intrusion, termite, and structural issues as well as fiduciary duty and other issues to the attention of the Clam Farm HOA, the Board, and the Developers and have demanded that action be taken to correct the deficiencies." (Ex. A, ¶ 86).

19.    The Homeowners allege that in letters dated December 21, 2018, February 14, 2019 and July 26, 2019, they have demanded of the Developers that they "retain a qualified, independent forensic investigator to thoroughly investigate and assess the condition of the buildings … and bring claims against [Clam Farm Partnership] and the other Defendants to protect the interests of the Clam Farm HOA and its members, individually." (Ex. A, ¶ 87).

20.    The Homeowners assert claims for Negligence/Gross Negligence against C.F. Evans and Four Builders. (Ex. A, Count VIII).

21.    The Homeowners allege that "Defendants [including C.F. Evans and Four Builders], their agents, servants, employees, and subcontractors undertook a duty to

[Homeowners] to exercise and use due care in the design and construction of the Clam Farm townhomes in a good workmanlike manner and with suitable materials, in accordance with all applicable building codes, state law, good design, and in conformance with industry standards. (Ex. A, ¶ 131).

22.     The Homeowners allege that Defendants breached their duties to Plaintiffs in a manner that was negligent, careless, reckless, grossly negligent, willful, and wanton in one or more of the following ways: (a.) failing to properly select qualified subcontractors or to contract with them to properly construct and oversee the construction of Clam Farm; (b.) In failing to properly coordinate, sequence or supervise the work and construction of Clam Farm; and (c.) failing to construct the Clam Farm townhomes in accordance with applicable building codes, the plans and specifications, and in a good workmanlike manner free from defects. (Ex. A, ¶ 132).

23.     The Homeowners allege that they have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, gross negligence, willfulness, and wantonness of the Defendants, including C.F. Evans and Four Builders, and are entitled to a judgment against the Defendants. (Ex. A, ¶ 133).

24.     The Homeowners also allege claims for breach of implied warranty of workmanlike service against C.F. Evans and Four Builders. (Ex. A, Count IX).

25.     The Homeowners allege that by performing construction work at Clam Farm, the Defendants, including C.F. Evans and  Four Builders impliedly warranted that the townhomes and common areas would be constructed in a careful, diligent, and workmanlike manner, and would be free from all defects. (Ex. A, ¶ 136).

26.    The Homeowners allege that the Defendants have breached the implied warranty of workmanlike service by constructing the Clam Farm Project in a defective manner. (Ex. A, ¶ 137).

27.    The Homeowners further allege that as a direct and proximate result of the Defendants' breach of warranty of workmanlike service, the Homeowners have suffered significant physical damage to the townhomes, including water intrusion, degradation in paint and various building components, and diminution

in value. The Homeowners further allege they have been damaged in that they have spent and will continue to spend large sums of money in order to determine the extent of the damage to the townhomes and to repair same. (Ex. A, ¶ 138).

28.    The Homeowners allege that as a result of their alleged injuries, they are entitled to a judgment against the Contractor Defendants. (Ex. A, ¶ 139).

29.    ***C.F. EVANS'S THIRD-PARTY CLAIM/CROSS-CLAIM:*** In response to the Clam Farm Complaint, C.F. Evans filed a third-party complaint against Four Builders and others. With the joinder of Four Builders as a Defendant by the Homeowners, C.F. Evans's third-party claim became a cross-claim. The current operative pleading by C.F. Evans against Four Builders is attached as Exhibit "B."

30.    C.F. Evans alleges that Four Builders and others are referred to as the "Cross-Claim Defendants," and that each Cross-Claim Defendant entered into a written contract with C.F. Evans that required them to perform their scopes of work in a good and workmanlike manner, in accordance with applicable building industry standards, manufacturer specifications and building codes, and to indemnify and defend C.F. Evans

from any claims arising from and due to defects in their respective scopes of work. (Ex. B, ¶ 74).

31.     C.F. Evans asserts a claim for Contractual Indemnity against Four Builders. (Ex. B, Count I).

32.     C.F. Evans alleges that the Cross-Claim Defendants were responsible for the provision of materials or services in connection with the construction or repair of the subject project, for proper quality control, and for compliance with the contract documents, industry standards, and requirements of all relevant building codes. C.F. Evans also alleges that in the event that the Homeowners establish that the materials or services provided by C.F. Evans, through the Cross-Claim Defendants, were not in compliance with the relevant contract documents, industry standards, and/or building code requirements, then and in that event, the Cross-Claim Defendants, have failed to properly execute their duties, which have allegedly caused the damages alleged by Homeowners. (Ex. B, ¶ 78).

33.     C.F. Evans alleges that the subcontract agreements, as executed between the Cross-Claim Defendants and C.F. Evans, provided for contractual indemnification in favor of C.F. Evans specifically including an undertaking to defend, indemnify, and hold harmless C.F. Evans or its predecessor and interest from and against any claim, suit, damage, or liability arising from the acts or omissions of the Cross-Claim Defendants in the performance of their scopes of work for C.F. Evans. (Ex. B, ¶ 79).

34.     C.F. Evans alleges that the circumstances give rise to a special relationship between C.F. Evans and Cross-Claim Defendants. (Ex. B, ¶ 80).

35.    C.F. Evans alleges that to the extent, if any, that C.F. Evans may be held liable to Homeowners, such liability would be a direct and proximate result of the wrongful acts, omissions, breach of contract, breach of warranty, negligence, or representation of the Cross-Claim Defendants, which have damaged C.F. Evans, as C.F. Evans has been subjected to liability or damages, and has incurred consequential damages, including but not limited to attorney's fees and costs incurred in defending against the claims of Homeowners or others. (Ex. B, ¶ 81).

36.    C.F. Evans alleges that to the extent that the Homeowners are or may be entitled to recover damages against C.F. Evans for any injuries complained in the Complaint, which injuries and damages are hereby specifically denied, C.F. Evans alleges that such damages were a direct and proximate result of the wrongful acts or omissions of the Cross-Claim Defendants and the performance of their scopes of work for C.F. Evans, and that C.F. Evans is entitled to contractual indemnity against the Cross-Claim Defendants in an amount equal to any liability or damages which may be attributed to C.F. Evans as a result of the aforesaid conduct of the Cross-Claim Defendants. Additionally, C.F. Evans further alleges that it is entitled to reimbursement of and indemnification against any amounts it may pay in settlement of the claims of Homeowners or others, in this action, C.F. Evans further alleges that it is entitled to recover attorney's fees and costs incurred in defending against those claims asserted against C.F. Evans in this action.

37.    C.F. Evans further asserts a claim for Equitable Indemnity. (Ex. B, Count II).

38.     C.F. Evans alleges that the circumstances give rise to a special relationship between C.F. Evans and the Cross-Claim Defendants. (Ex. B, ¶ 84).

39.     C.F. Evans alleges that to the extent that Homeowners may be entitled to recover damages against C.F. Evans for damages complained of the in their Amended Complaint, C.F. Evans alleges that those damages were a direct and proximate result of the wrongful acts or omissions of the Cross-Claim Defendants, and that C.F. Evans is therefore entitled to equitable indemnity against the Cross-Claim Defendants in an amount equal to any damages attributed to C.F. Evans as a result of the conduct of the Cross-Claim Defendants. C.F. Evans further alleges that it is entitled to reimbursement of indemnification against any amounts paid in settlement of the claims of Homeowners. C.F. Evans further alleges that it is entitled to attorney's fees and costs incurred in defending against those claims asserted in the pending litigation. (Ex. B, ¶ 85).

40.     For Count III, C.F. Evans asserts a claim for Breach of Express Warranty. (Ex. B, Count III).

41.     C.F. Evans alleges that the Cross-Claim Defendants, made express warranties that materials, services, or workmanship provided in conjunction with their respective services at the subject project would be as required by and in accordance with the contract documents, applicable building codes, and industry standards. (Ex. B, ¶ 87).

42.     C.F. Evans alleges that the subcontract agreements between C.F. Evans and the Cross-Claim Defendants include provisions by which the Cross-Claim Defendants expressly undertook to provide materials and services in accordance with the contract documents. (Ex. B, ¶ 88).

43.     C.F. Evans alleges that in the event that Homeowners prove that the materials or services provided by C.F. Evans, through the cross-Claim Defendants, were not in accordance with the requirements of the contract documents, industry standards, stated warranties or relevant building requirements, then and in that event the Cross-Claim Defendants, have materially breached their express warranties. (Ex. B, ¶ 89).

44.     Count IV of C.F. Evans's cross-claim asserts a claim for Breach of Implied Warranty. (Ex. B, Count IV).

45.     C.F. Evans alleges that the Cross-Claim Defendants, made implied warranties of workmanlike service in connection with the construction services they provided at the subject project. (Ex. B, ¶ 92).

46.     C.F. Evans alleges that in the event that Homeowners prove that the services of C.F. Evans, provided through the Cross-Claim Defendants, were deficient, then, the Cross-Claim Defendants have materially breached its implied warranties. (Ex. B, ¶ 93).

47.     In Count V, C.F. Evans asserts a claim for Negligence. (Ex. B, Count V).

48.     C.F. Evans alleges that the Cross-Claim Defendants owed a duty of care in providing services and materials in connection with construction of the Clam Farm Project. (Ex. B, ¶ 96).

49.     C.F. Evans alleges that in the event that Homeowners prove that due care was not exercised in the provision of materials or services by the Cross-Claim Defendants for C.F. Evans, then, the Cross-Claim Defendants have breached their duties of due care. (Ex. B, ¶ 97).

50.    C.F. Evans alleges that in the event that Homeowners obtain a judgment against C.F. Evans as a direct, foreseeable, and proximate result of the negligence of the Cross-Claim Defendants, then C.F. Evans is entitled to judgment against the Cross-Claim Defendants, for the amount of any such judgment, plus costs of defense, inclusive of attorneys' fees.

51.    Count VI of C.F. Evans's cross-claim asserts a claim for Breach of Contract. (Ex. B, Count VI).

52.    C.F. Evans alleges that the Cross-Claim Defendants, were contractually responsible for provision of adequate materials and services in connection with its undertakings regarding construction of the subject project and for providing various insurance coverages set out in the subcontract. (Ex. B, ¶ 100).

53.    C.F. Evans alleges that That in the event it is shown that the Cross-Claim Defendants' contracts with C.F. Evans were breached due to improper or adequate materials or services provided or failure to provide required insurance coverages by the Cross-Claim Defendants, then, and in that event, the Cross-Claim Defendants, have materially breached their subcontracts with C.F. Evans, by failing properly and adequately to provide materials and services in connection with construction of the subject project or failure to provide required insurance coverages. (Ex. B, ¶ 101).

54.    Count VII of C.F. Evans's cross-claim asserts a claim for Contribution. (Ex. B, Count VII).

55.    C. F. Evans alleges that if it is found to be liable to Homeowners, then the Cross-Claim Defendants are joint tortfeasors and C.F. Evans is entitled to contribution

from the Cross-Claim Defendants jointly or severally, pursuant to the provisions of the South Carolina Uniform Contribution Among Joint Tortfeasors Act, Sections 15-38-10, *et seq.*, South Carolina Code of Laws 1976, as amended.

56.    ***FOUR BUILDERS'S SCOPE OF WORK:*** C.F. Evans retained Four Brothers to perform the siding and trim work on the Clam Farm Project's Phase I buildings and pool house.

57.    The C.F. Evans-Four Builders subcontract was dated December 29, 2008, and Four Builders' work began on or about February 2009.

58.    The Certificates of Occupancy for Phase I of the Clam Farm Project were issued on April 19, 2010. Copies of the Certificates of Occupancy are attached as Exhibit "C."

59.    ***THE POLICIES:***    Atain issued two successive CGL policies to Four Builders as the sole named insured: Policy No. SCAGL80052, effective March 25, 2009 through March 25, 2010 (the "2009-10 Policy"), and SCAGL80052R1, effective March 25, 2010 through March 25, 2011 (the "2010-11 Policy") (collectively, the "Policies"). True and correct copies of the 2009-10 Policy and the 2010-11 Policy are attached as Exhibits "D" and "E," respectively. The Policies provide CGL coverage subject their terms, with limits of $1,000,000 per occurrence and $2,000,000 aggregate limits, subject to a $1,000 per claim deductible.

60.    The Policies' main insuring agreement is provided in Form CG 00 01 12 07, which provides, in pertinent part as follows:

**SECTION I - COVERAGES**
**COVERAGE A- BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages, claims expenses and defense costs because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. …

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period …

2.    **Exclusions**

This insurance does not apply to:

    b.    **Contractual Liability**

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        (1)    That the insured would have in the absence of the contract or agreement; or

        (2)    Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property

damage" occurs subsequent to the execution of the contract or agreement. …

**j.     Damage To Property**

"Property damage" to:

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)     That particular part of any property that must be restored, repaired or replaced be-cause "your work" was incorrectly per-formed on it….

**k.     Damage To Your Product**

"Property damage" to "your product' arising out of it or any part of it.

**l.     Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor. …

**m.     Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product' or "your work"; or

- 17 -

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use. …

**n.    Recall of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)    "Your product',
(2)    "Your work"; or
(3)    "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it. …

**SECTION V-DEFINITIONS** …

**8.**    "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

a.    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.    You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement. …

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. …

- 18 -

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product"
        or "your work"…

**17.**    "Property Damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

**21.**    "Your product" means:

    **a.**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        (1)    You;
        (2)    Others trading under your name; or
        (3)    A person or organization whose business or assets you have
            acquired . . .

**22.**    "Your work":

    **a.**    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

    (1)    Warranties or representations made at any time with respect
to the fitness, quality, durability, performance or use of "your work"; and

    (2)    The providing of or failure to provide warnings or instructions. …

(Ex. D-E, Form No. CG 00 01 12 07).

61.    The Policies also include Form No. IC IL 11 30 06 97 REV, titled "Continuous Or Progressive Injury Limitation" ("CPIL Endorsement"), which provides in pertinent part:

A.    This insurance does not apply to the following, which is added to the EXCLUSIONS:

All bodily injury," "property damage," personal injury" or "advertising injury" that first becomes actually or constructively known to any person prior to the effective date or after the expiration of this policy regardless of whether there is repeated or continued exposure during the period of the policy or whether the injury or damage continues, progresses or deteriorates during the term of the policy.

B.    If this policy extends for more than one annual period, then the following applies:

1.    The most we will pay for "bodily injury," " property damage," "personal injury," and "advertising injury" that is continuous or progressively deteriorating, and that is first apparent during one of the periods of this policy, is the applicable limit of insurance available with respect to that one period.

2.    The limit specified in paragraph B.1. above is the only limit that applies to all related "bodily injury," "property damage," "personal injury" or advertising injury", regardless of whether such injury or damage existed before, or continues or progressively deteriorates after, the period in which it is first apparent.

C.    Within the meaning of this endorsement, injury or damage is apparent when appreciable harm occurs that is or should be known to the insured, the person, or organization harmed. …

(Ex. D-E, Form No. Form No. IC IL 11 30 06 97 REV).

62.    The 2010-11 Policy also includes Form No. B&W 33515C 1 06/2008, titled, "Exclusion – Condominiums, Townhouse, Row House, Or Tract Home Construction Projects," ("Condo/Townhome Exclusion"), which provides in pertinent part:

1.    The following Exclusion is added to **2. Exclusions of SECTION 1 - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY and COVERAGE C MEDICAL PAYMENTS:**

**Condominiums / Townhouse/ Row Houses/ or Tract Homes**

This insurance does not apply on behalf of any insured or additional insured (whether status obtained by contract, additional insured endorsement or certificate of insurance) to any claim or "suit" including, but not limited to, indemnification or defense costs, arising from, related to, or in any way connected with a "condominium project," "townhouse project," "row house project," or 'tract home project."

For the purposes of this endorsement, the following definitions are added to **SECTION V DEFINITIONS:**

"Condominium project" means a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and with other parts or portions of the overall development, including buildings, structures, land, and other such common elements being owned in common by all owners of the separate individual units, either with or without the establishment of a corporate entity or incorporated association to oversee and manage the common elements. …

"Townhouse project" means a development of five or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings,

structures, land and other common elements being owned in common by all owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements. …

This exclusion does not apply when:

Any work or services performed by or on behalf of any insured, or any goods or products provided by or on behalf of any insured is limited to a single unit that is part of a "condominium project," "row house project," "townhouse project," and/ or "tract home project" if such work, service(s), good(s), or product(s) is limited to remodeling or renovation of an existing unit.

All other terms and conditions of this policy remain unchanged. …

63.     The Policy also includes Form No. CG 2167 12 04, titled, "Fungi or Bacteria

Exclusion," which provides, in relevant part:

**A.**     The following exclusion is added to Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**:

**2.     Exclusions**

This insurance does not apply to:

Fungi Or Bacteria

a.     "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b.     Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing,     treating,     detoxifying,     neutralizing,

- 22 -

remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption. …

**C.**  The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. …

(Ex. D-F, Form No. CG 2167 12 04).

64.   The Policies include Form No. USF001007 01-10, titled, "Combined Coverage And Exclusion Endorsement," which provides, in pertinent part:

**II.    PUNITIVE DAMAGES EXCLUSION**

This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered tuns brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties. …

(Exs. D-E, Form No. USF001007 01-10).

65.   Atain disclaimed coverage for Four Builders for the Clam Farm Lawsuit and C.F. Evans's third-party claim/cross-claim. Atain also disclaimed coverage to C.F. Evans who claims to be an additional insured under the Policies. Atain now seeks declaratory judgment as to whether it has any obligation to defend or indemnify Four Builders or C.F. Evans in the Clam Farm Lawsuit, including C.F. Evans's cross-claims.

## <u>COUNT I – NO COVERAGE UNDER 2009-10 POLICY</u>

66.   Atain incorporates paragraphs 1-65 as paragraph 66 of Count I.

67.     The Homeowners Lawsuit alleges that "[s]ince the construction of Clam Farm, buildings in all three phases have exhibited evidence of premature degradation of building components, including paint and sealants, as well as building performance failures, including, but not limited to, water intrusion, termites, structural failure, and settlement issues." (Ex. A, ¶ 67).

68.     The Homeowners Lawsuit alleges that due to these deficiencies, continuous and repeated exposure to harmful conditions, including but not limited to water intrusion, has occurred resulting in physical injury to tangible property and damages (Ex. A, ¶ 68).

69.     The construction of Phase I of the Clam Farm Project, on which Four Builders and C.F. Evans were alleged to have worked, was completed on April 19, 2010. (Ex. C).

70.     The Clam Farm Lawsuit does not allege any "property damage" occurring during the 2009-2010 Policy, which terminated on March 25, 2010.

71.     Accordingly, there is no coverage for the Clam Farm Lawsuit, including C.F. Evans's third-party complaint, under the 2009-10 Policy.

## COUNT II – NO COVERAGE UNDER 2010-11 POLICY CONDO/TOWNHOME EXCLUSION

72.     Atain incorporates paragraphs 1-65 as paragraph 72 of Count II.

73.     There is no coverage because the 2010-11 Policy's Condo/Townhome Exclusion applies to bar coverage under the 2010-11 Policy.

74.    The Clam Farm Project falls within the definition of a "townhouse project" because it is a development of at least five or more individual housing units connected to one another by one or more walls, with other parts or portions of the overall development, including buildings, structures, land and other common elements being owned in common by all owners of the separate individual housing units, either with or without the establishment of a corporate entity or unincorporated association to oversee and manage the use and maintenance of common elements.

75.    The Clam Farm Project also meets the 2010-11 Policy's definition of a "condominium project" because it is a housing development in which individual parties are located within one or more buildings or structures containing multiple units, with each individual unit being owned separately and with other parts or portions of the overall development, including buildings, structures, land, and other such common elements being owned in common by all owners of the separate individual units, either with or without the establishment of a corporate entity or incorporated association to oversee and manage the common elements.

76.    Under the 2010-11 Policy's Condo/Townhome Exclusion, there is no coverage for any claim or "suit" including, but not limited to, indemnification or defense costs, arising from, related to, or in any way connected with a "condominium project," "townhouse project."

77.    Four Builders's and C.F. Evans's work on the Clam Farm Project was for the new construction of multiple units.

78.     Accordingly, there is no coverage under the 2010-11 Policy, because the 2010-11 Policy's Condo/Townhome Exclusion applies to bar coverage.

### COUNT III – NO COVERAGE
### CPIL ENDORSEMENT

79.     Atain incorporates its allegations in paragraphs 1-65 as paragraph 79 of Count III.

80.     Under the Policies' CPIL Endorsement, there is no coverage for any "property damage," that first becomes actually or constructively known to any person prior to the effective date or after the expiration of this policy regardless of whether there is repeated or continued exposure during the period of the policy or whether the injury or damage continues, progresses or deteriorates during the term of the policy.

81.     There is no coverage under the 2009-10 Policy because there are no allegations of "property damage" occurring during the 2009-10 Policy. Accordingly, no such damage could possibly be actively or constructively known to any person.

82.     There is no coverage under the 2010-11 Policy because there is no "property damage" that was allegedly caused by C.F. Evans or Four Builders that was actually or constructively known to any person until after the 2010-11 Policy terminated on March 25, 2011.

83.     The Homeowners were not aware of any "property damage" occurring between March 25, 2010 and March 25, 2011.

84.     Four Builders admits it first learned of any alleged damages when it was first served with C.F. Evans's third-party complaint in the Clam Farm Lawsuit.

85.    Had Four Builders been aware of such "property damage" during its policy periods it would have breached the Policies' notice conditions.

86.    No other person or entity involved with the Clam Farm Project was aware of any "property damage occurring between March 25, 2010 and March 25, 2011.

87.    Accordingly, there is no coverage under the Policies' CPIL Endorsement.

## COUNT IV – NO COVERAGE
## NO PROPERTY DAMAGE

88.    Atain incorporates its allegations in paragraphs 1-65 as paragraph 88 of Count IV.

89.    There is no coverage under the Policies because the Clam Farm Lawsuit seeks to recover the costs to repair or replace Four Builders's of C.F. Evans's own work, including the removal and replacement of other property to facilitate the repair or replacement of Four Builders's or C.F. Evans's work.

90.    The cost to repair or replace Four Builders's or C.F. Evans's work does not constitute "property damage" under the Policies. Additionally, the costs to remove and replace other parts of the subject property to effectuate the repair or replacement of Four Builders's or C.F. Evans's work does not constitute "property damage."

91.    There is no coverage for any alleged "property damage" that did not occur during any policy period.

92.    Alternatively, to the extent the Clam Farm Lawsuit alleges any "property damage" as defined by the Policies and South Carolina law, Atain is only obligated to pay for its *pro rata* share of such damages based on its time on the risk.

93.    Accordingly, there is no coverage under the Policies, and consequently no duty to defend or indemnify Four Builders or C.F. Evans. Alternatively, to the extent there is any covered "property damage," Atain's indemnity obligations are limited by its *pro rata* time on the risk.

<u>COUNT V – NO COVERAGE</u>
<u>BUSINESS RISK EXCLUSIONS</u>

94.    Atain incorporates its allegations in paragraphs 1-65 as paragraph 94 of Count V.

95.    There is no coverage for C.F. Evans's cross claims under the Policies' Contractual Liability Exclusion (Coverage Part A.2.b.). To the extent C.F. Evans seeks damages for contractual or equitable indemnity or breach of contract, the Policies do not cover such claims, to the extent the C.F. Evans/Four Builders subcontract does not qualify as an "insured contract."

96.    There is no coverage to the extent the Clam Farm Lawsuit seeks damages for "property damage" to any real property on which Four Builders, C.F. Evans, or their subcontractors performed any work or operations under Coverage Part A.2.(j)(5).

97.    There is also no coverage to the extent the Clam Farm Lawsuit seeks damages for "property damage" to any property that must be restored, repaired or replaced because Four Builders's or C.F. Evans's work was incorrectly performed on it under Coverage Part A.2.(j)(6).

98.     There is no coverage to the extent that the Clam Farm Lawsuit seeks damages to Four Builders's or C.F. Evans's product under Coverage Part A.2.(k) ("Your product" Exclusion).

99.     There is no coverage to the extent the Clam Farm Lawsuit seeks damages to Four Builders's or C.F. Evans's work, arising out of it and included in the products-completed operations hazard under Coverage Part A.2.l. ("Your work" Exclusion).

100.    There is no coverage to the extent that the Clam Farm Lawsuit seeks damages for impaired property under Coverage Part A.2.m. ("Impaired Property" Exclusion).

101.    There is no coverage to the extent that the Clam Farm Lawsuit seeks damages for any loss, cost or expense incurred by Four Builders, C.F. Evans, or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of Four Builders's or C.F. Evans's product, Four Builders's or C.F. Evans's work, or any "impaired property" if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it under Coverage Part A.2.n. ("Recall Exclusion").

**COUNT VI – NO COVERAGE**
**FUNGI OR BACTERIA EXCLUSION**

102.    Atain incorporates its allegations in paragraphs 1-65 as paragraph 102 of Count VI.

- 29 -

103.    To the extent the Homeowners seek damages due to any exposure to, development of, or growth of mold, mildew, or bacteria inside of subject property, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

104.    To the extent that the Homeowners seek damages due to any costs or expenses associated with the removal, repair, remediation, monitoring, or testing for mold, mildew, or bacteria, there is no coverage under the Policies' Fungi or Bacteria Exclusion.

## COUNT VII – NO COVERAGE
## PUNITIVE DAMAGES EXCLUSION

105.    Atain incorporates its allegations in paragraphs 1-65 as paragraph 105 of Count VII.

106.    There is no coverage, and Atain has no duty to indemnify Four Builders or C.F. Evans for any punitive damages that are awardable or may be awarded to the Homeowners, under the Policies' Punitive Damages Exclusion.

## COUNT VIII – NO COVERAGE
## INTEGRATED POLICY PROVISIONS

107.    Atain incorporates its allegations in paragraphs 1-65 as paragraph 107 of Count VIII.

108.    Atain fully incorporates by reference each and every term, condition, exclusion and endorsement contained within Exhibits D-E, including but not limited to the Policies' Notice Conditions.

109.    To the extent any additional term, condition, exclusion or endorsement within the Policies applies to the allegations, facts, or circumstances as discovered in this

action or the Clam Farm Lawsuit and the C.F. Evans third-party claim/cross-claim, Atain seeks a declaration to the extent such terms, conditions, exclusions or endorsements eliminate or reduce the available coverage for the Clam Farm Lawsuit.

## REQUESTED RELIEF

**WHEREFORE**, Atain respectfully requests this Court:

a.  Take jurisdiction and adjudicate the rights of the parties under the Policies;

b.  Find that Atain has no obligation to defend or indemnify Four Builders or C.F. Evans for the Clam Farm Lawsuit, including C.F. Evans's cross-claims, under the Policies;

c.  Alternatively, and only to the extent the Court finds Atain has an obligation to defend Four Builders or C.F. Evans, that it find that Atain has no duty to indemnify Four Builders or C.F. Evans, or that Atain's duty to indemnify is limited or reduced by one or more of the Policies' terms, conditions, exclusions or endorsements; and

d.  Award Atain all costs it incurs to prosecute this action, as well as any other relief that this Court deems equitable, just, and proper.

Respectfully submitted,

COOPER TIERNEY

*/s/ Lindsey W. Cooper*
Lindsey W. Cooper Jr. (Fed. ID No. 9909)
M. Linsay Boyce (Fed. ID No. 11952)
Dustin J. Pitts (Fed. ID No. 13511)
36 Broad Street
Charleston, SC  29401
P: 843-375-6622
F: 843-375-6623
E-mail: lwc@coopertierney.com
        linsay@coopertierney.com
        djp@coopertierney.com

Dated: August 22, 2024
Charleston, South Carolina